No. 21-55981

# United States Court of Appeals
## FOR THE NINTH CIRCUIT

STEVE MARQUEZ,
PLAINTIFF-APPELLEE

*v.*

C. RODRIGUEZ AND L. KELLY,
DEFENDANTS-APPELLANTS

*On Appeal from the United States District Court for the*
*Southern District of California*
*3:18-cv-0434-CAB-NLS*

**REPLY BRIEF FOR APPELLANTS**

RANDY S. GROSSMAN
*United States Attorney*

KATHERINE L. PARKER
*Assistant U.S. Attorney*
*Chief, Civil Division*

COLIN M. MCDONALD
*Assistant U.S. Attorney*

*880 Front St., Rm. 6293*
*San Diego, CA 92101*
*(619) 546-9144*

**TABLE OF CONTENTS**

Introduction ................................................................1

Argument .................................................................4

A. The District Court Erred by Not Dismissing
   Marquez's *Bivens* Claims. ...................................4

   1.  Marquez Seeks to Extend *Bivens* to a New
         Context ........................................................4

   2.  There Are Multiple Rational Reasons—Where Only
         One Is Needed—to Think Congress Is Better Suited
         to Provide a Damages Remedy Here.........................12

      a.  BOP's Alternative Remedial Process Is a
            Standalone Rational Reason That Forecloses
            Extending *Bivens*. .....................................13

      b.  The Absence of a *Bivens*-Like Remedy in
            Extensive Congressional Legislation Is a
            Standalone Rational Reason That Forecloses
            Extending *Bivens*. .....................................18

      c.  The Potential Burdens on BOP and BOP
            Employees Is a Standalone Rational Reason
            That Forecloses Extending *Bivens*. ......................19

      d.  The Difficulty of Devising a Workable Cause
            of Action Is a Standalone Rational Reason
            That Forecloses Extending *Bivens*. ......................23

B. The District Court Erred By Failing to Dismiss
   Marquez's *Bivens* Claims on Qualified Immunity
   Grounds.......................................................24

Conclusion ...............................................................30

Certificate of Compliance

TABLE OF AUTHORITIES

Cases:

*Anderson v. Creighton*, 483 U.S. 635 (1987)....................24

*Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) .................7, 8

*Bush v. Lucas*, 462 U.S. 367 (1983) ................................16

*Calix v. Pope*, No. 18-CV-3980-RPK-PK,
  2022 WL 4539511 (E.D.N.Y. Sept. 28, 2022) ................22

*Carlson v. Green*, 446 U.S. 14 (1980) .......................passim

*Choice v. Michalak*, No. 21-CV-0060,
  2022 WL 4079577 (N.D. Ill. Sept. 6, 2022)...................8, 9

*City of Escondido, Cal. v. Emmons*,
  139 S. Ct. 500 (2019) .................................................24, 25

*Cooper Indus., Inc. v. Aviall Servs.,
  Inc.*, 543 U.S. 157 (2004) ............................................. 7-8

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)...........15

*D.C. v. Wesby*, 138 S. Ct. 577 (2018) ...............................26

*Davis v. Scott*, 94 F.3d 444 (8th Cir. 1996).......................28

*Dyer v. Smith*, -- F.4th --,
  2022 WL 17982796 (4th Cir. Dec. 29, 2022).....................1

*Egbert v. Boule*, 142 S. Ct. 1793 (2022) ...................passim

*Farmer v. Brennan*, 511 U.S. 825 (1994).................passim

*Hamby v. Hammond*,
  821 F.3d 1085 (9th Cir. 2016) ...................................28, 29

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) .............5, 10, 11

*Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. 2022) ......2, 16

*Hoffman v. Preston*, 50 F.4th 927 (9th Cir. 2022) ........2, 17

*Hoffman v. Preston*, No. 20-15396,
 2022 WL 6685254 (9th Cir. Oct. 11, 2022)
 (unpublished) .............................................................3, 17

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) .................10

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ..........................29

*Morris v. Burrkhouse*, Case No. 19-CV-5839-SVW-KK,
 2021 WL 2119497 (C.D. Cal. March 24, 2021) ...............26

*Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997) ................26

*Olivier v. Baca*, 913 F.3d 852 (9th Cir. 2019) ...................23

*Rice v. Morehouse*, 989 F.3d 1112 (9th Cir. 2021) ............24

*Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) .........3, 26

*Sampson v. Cnty. of Los Angeles by & through Los
 Angeles Cnty. Dep't of Child. & Fam. Servs.*,
 974 F.3d 1012 (9th Cir. 2020) .........................................25

*Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022) ....................5

*Taylor v. Barkes*, 575 U.S. 822 (2015) ..............................29

*Texas v. Cobb*, 532 U.S. 162 (2001) ....................................6

*Turner v. Safley*, 482 U.S. 78 (1987) .................................23

*United States v. L.A. Trucker Lines, Inc.*,
 344 U.S. 33 (1952).............................................................6

*Webster v. Fall*, 266 U.S. 507 (1925) ..................................8

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .................. passim

iii

Constitution and Statutes:

    First Amendment..........................................................7, 20

    Fifth Amendment ...................................................... passim

    Eighth Amendment ................................................... passim

    18 U.S.C. § 4001(b)(1) .......................................................14

Regulations:

    28 C.F.R. § 542.10(a) .......................................................14

    28 C.F.R. § 542.11(a) .......................................................14

No. 21-55981

# United States Court of Appeals

FOR THE NINTH CIRCUIT

STEVE MARQUEZ,
PLAINTIFF-APPELLEE

*v.*

C. RODRIGUEZ AND L. KELLY,
DEFENDANTS-APPELLANTS

*On Appeal from the United States District Court
for the Southern District of California
3:18-cv-0434-CAB-NLS*

**REPLY BRIEF FOR APPELLANTS**

## INTRODUCTION

The Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), makes plain that a *Bivens* remedy is unavailable here. Under *Egbert*, where there is "*any* rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed," courts may not fashion a *Bivens* remedy. *Id.* at 1805. The upshot of *Egbert* is clear: "the Supreme Court all but closed the door on *Bivens* remedies." *Dyer v. Smith*, -- F.4th --, 2022 WL 17982796, at *3 (4th Cir. Dec. 29, 2022). This Court should reject Marquez's invitation to open it wide again. As outlined in the opening brief, there are multiple

1

rational reasons "to think that Congress might be better equipped to create a damages remedy" in the new *Bivens* context presented here. *Egbert*, 142 S. Ct. at 1803. In resisting that reality, Marquez presses what *Egbert* prohibits—analyzing the "special-factors analysis at too granular a level." *Id.* at 1806. The proper approach "broadly" considers whether there "is *any* reason to think that 'judicial intrusion' into a given field *might* be 'harmful' or 'inappropriate.'" *Id.* at 1805 (emphasis added). Where any such reason exists—even "uncertainty" as to the potential systemwide consequences of permitting a claim—a court cannot fashion a *Bivens* remedy. This strict test means that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800. This case—which implicates core decisionmaking within the Bureau of Prisons—is not that rare exception.

Neither was *Hoffman*, where a correctional officer allegedly labeled a prisoner a snitch, offered others a bounty to assault the prisoner, and failed to protect the prisoner from a predictable assault. *See Hoffman v. Preston*, 26 F.4th 1059, 1061 (9th Cir. 2022) (opinion withdrawn at 50 F.4th 927). In *Egbert*'s wake, the Court in *Hoffman* withdrew its opinion extending *Bivens* to the above facts, concluding instead that "*Egbert v. Boule* precludes recognizing a

*Bivens* remedy for these allegations. Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' … why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints." *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished). The same analysis—only simpler— applies in this case. The district court's order permitting Marquez's *Bivens* claims to proceed should be reversed.

Similarly, separate from the *Bivens* inquiry, Appellants are entitled to qualified immunity because the facts alleged do not establish they violated a clearly established constitutional right. In response, Marquez frames the "clearly established right" at a level of generality that the Supreme Court has repeatedly forbidden. Marquez otherwise fails to cite a single case sufficiently similar to the facts here to provide Appellants specific notice that their conduct was unconstitutional. *See, e.g., Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 9 (2021) ("On the facts of this case, [no] … decision of this Court is sufficiently similar. For that reason, we … reverse the Ninth Circuit's determination that Rivas-Villegas is not entitled to qualified immunity.").

The Court should reverse the district court's order denying Appellants' motion to dismiss.

## ARGUMENT

A.    The District Court Erred by Not Dismissing Marquez's *Bivens* Claims.

The district court found that Marquez's Fifth Amendment claim presented a new *Bivens* context, but nonetheless proceeded to fashion a *Bivens* remedy for the claim. The opening brief outlines various reasons why the court erred by extending *Bivens*. In response, Marquez claims his case presents no new *Bivens* context at all. He further argues that even if his claims present a new context, this Court should not hesitate to extend *Bivens*. Marquez is wrong on both fronts.

1.    Marquez Seeks to Extend *Bivens* to a New Context.

a.    Marquez claims the district court erred by finding his case presents a new *Bivens* context. Appellee's Answering Brief (AAB) 17–25. Marquez argues that in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court implicitly extended *Carlson v. Green*, 446 U.S. 14 (1980)—one of the three Supreme Court *Bivens* cases—to cover Eighth Amendment deliberate indifference claims on failure-to-protect facts.

Marquez's reliance on *Farmer* is misplaced. There, the claim (raised under the Eighth Amendment) involved the failure of prison officials to protect a transsexual inmate from an attack that

4

involved a beating and rape, even though the officials knew that the prison had a "violent environment" and that the inmate was "particularly vulnerable to sexual attack." *Farmer*, 511 U.S. at 831. The Supreme Court did not find that the claim was a viable *Bivens* claim—it did not even take up that question. *See Tate v. Harmon*, 54 F.4th 839, 847 (4th Cir. 2022) (*Farmer* "never addressed whether the claim was properly a *Bivens* claim"). Rather, the case was about the Eighth Amendment deliberate indifference standard. *See Farmer*, 511 U.S. at 829 ("This case requires us to define the term 'deliberate indifference,' as we do by requiring a showing that the official was subjectively aware of the risk."). Unsurprisingly then, *Farmer* has never appeared in the Supreme Court's frequent catalogues of its *Bivens* cases. *See Egbert*, 142 S. Ct. at 1799–1800, 1802; *Hernandez v. Mesa*, 140 S. Ct. 735, 741, 743 (2020); *Ziglar v. Abbasi*, 137 S. Ct. 1983, 1854–55, 1857 (2017).

Marquez generously interprets this silence to mean *Farmer* was a run-of-the-mill "application of *Carlson*." AAB at 19. That cannot be. To begin, in this *Bivens* era with "caution" as its "watchword," *Egbert*, 142 S. Ct. at 1803, there are no "run-of-the-mill" *Bivens* "applications." *See id.* at 1800 ("in all but the most unusual circumstances, prescribing a cause of action is a job for Congress"). Moreover, Marquez's interpretation of the Supreme

Court's silence as to *Farmer* presupposes that some "application" of *Carlson* to *Farmer* has ever happened. It has not. *Farmer* did not purport to "apply" *Carlson*, nor did the Supreme Court scrutinize it under any *Bivens* framework. *See, e.g.*, *Egbert*, 142 S. Ct. at 1809 ("[A] plaintiff cannot justify a *Bivens* extension … unless he … satisfies the 'analytic framework' prescribed by the last four decades of intervening case law."). As such, *Farmer* does not support a *Bivens* action here. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see United States v. L.A. Trucker Lines, Inc.*, 344 U.S. 33, 38 (1952) (explaining that an issue not "raised in briefs or argument nor discussed in the opinion of the Court" cannot be "binding precedent on th[e] point").

Finally, leaving no doubt as to the canon of *Bivens* law and *Farmer's* absence from it, when *Abbasi* considered whether the prisoner-mistreatment claim there presented a new context, it compared the claim to *Carlson*, not *Farmer*. *See Abbasi*, 137 S. Ct. at 1864–65. It did so even though the dissent specifically highlighted *Farmer* as an example of such a claim. *See id.* at 1877–78 (Breyer, J., dissenting). This all makes clear *Farmer* is not a long-lost sequel to the *Bivens* trilogy; it sits on a different shelf altogether. *See id.* at 1855 ("These three cases—*Bivens*, *Davis*, and

*Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

b.     Marquez cites the Third Circuit's decision in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), which relied on *Farmer* to hold that a Fifth Amendment failure-to-protect claim by a pretrial detainee did not present a new *Bivens* context. *Bistrian* is wrong for several reasons.

First, in cursory fashion, *Bistrian* simply concluded that "[i]t seems clear … that the Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment." 912 F.3d at 91. For the reasons above, the conclusion that *Farmer* is a *Bivens* context does not withstand even light scrutiny. To add one more, the Supreme Court in *Egbert* had no difficulty rejecting a First Amendment *Bivens* claim even while acknowledging it had in a prior case "assumed that such a damages action might be available[.]" *Egbert*, 142 S. Ct. at 1807. That conclusion flows logically from the common notion that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall*

*Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). *Bistrian* violates that basic tenet.

Second, *Bistrian* incorrectly perceived that a contrary reading of *Farmer* would amount to overruling *Farmer* by implication. *Bistrian*, 912 F.3d at 91. It would not. *Farmer* applies to the question it considered: the substantive standard for Eighth Amendment failure-to-protect claims.

Third, *Bistrian* speculated that *Abbasi*, in not citing *Farmer*, may have "simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context." *Bistrian*, 912 F.3d at 91. But that reasoning contradicts *Abbasi*'s holding that the prisoner mistreatment claims there presented a new context. 137 S. Ct. at 1864–65. Moreover, as outlined above, *Abbasi* compared its context to *Carlson*—not *Farmer*. If *Farmer* had already plowed *Bivens* ground, *Abbasi* would have sowed in its fields.

Fourth, *Bistrian* concluded that a claim arising out of the Fifth Amendment presents the same *Bivens* context as a claim arising out of the Eighth Amendment. But "a similar argument garnered the support of only the dissenting Justices in [*Abbasi*]." *Choice v. Michalak*, No. 21-CV-0060, 2022 WL 4079577, at *5 (N.D. Ill. Sept. 6, 2022) (quoting *Abbasi*, 137 S. Ct. at 1877–78 (Breyer

8

and Ginsburg, JJ., dissenting)). The majority in *Abbasi* rejected that argument, and *Egbert* has since unequivocally stated that "a new context arises when there is a new constitutional right at issue[.]" *Egbert*, 142 S. Ct. at 1807 (quotation omitted); *see Choice*, 2022 WL 4079577 at *5 ("[W]e do not read *Egbert*'s unequivocal statement that 'a new context arises when there is a new constitutional right at issue,' as leaving any leeway to conclude that two different constitutional rights present the same *Bivens* context because they may, in practice, prohibit similar conduct.") (internal citation omitted). *Bistrian* cannot be squared with Supreme Court *Bivens* jurisprudence, particularly post-*Egbert*. This Court should not follow it.

c.    Even if *Farmer* had established a *Bivens* remedy, this case would still present a new *Bivens* context. For instance, *Abbasi* presented a "new context" from *Carlson* in part because "*Carlson* was predicated on the Eighth Amendment and [the claim in *Abbasi* was] predicated on the Fifth." *Abbasi*, 137 S. Ct. at 1864. Affirming that principle, *Egbert* stated that "a new context arises when there is a new constitutional right at issue[.]" *Egbert*, 142 S. Ct. at 1807 (quotations omitted). This alone stymies Marquez's

9

effort to place his Fifth Amendment claim within *Farmer*'s Eighth Amendment context.[1]

And that is just the start of the meaningful differences. *See Abbasi*, 137 S. Ct. at 1859 ("If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new."). For instance, on the facts, Farmer's claim that it was deliberately indifferent to imprison her, a transsexual female, in a male prison, is meaningfully different from Marquez's claim of deliberate indifference for not placing him in special housing based solely on the charged crime and no specific threat. *See, e.g., Hernandez*, 140 S. Ct. at 743–44 ("it is glaringly obvious that petitioners' claims involve a new context, i.e., one that is meaningfully different. *Bivens* concerned an allegedly unconstitutional arrest and search carried out in New York City;

_____

[1] Marquez claims this is a distinction without a difference. But the Supreme Court—as outlined above—says otherwise. Moreover, as the district court noted, the Fifth and Eighth Amendments involve different language and different standards. *See* ER-015 (*citing Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("The language of the two clauses differs, and the nature of the claims often differs.") *and Abbasi*, 137 S. Ct. 1865 ("The differences between [the detainee mistreatment claim here] and the one in *Carlson* are perhaps small, at least in practical terms. Given this Court's expressed caution about extending the *Bivens* remedy, however, the new-context inquiry is easily satisfied.")).

10

*Davis* concerned alleged sex discrimination on Capitol Hill. There is a world of difference between those claims and petitioners' cross-border shooting claims") (citations omitted). As the Supreme Court has said, its "understanding of a 'new context' is broad." *See Hernandez*, 140 S. Ct. at 743. Even if a claim "has significant parallels to one of the [Supreme] Court's previous [three] *Bivens* cases," and even if the suit only seeks a "modest extension" based on "small" differences, unless such differences are "so trivial," they are "meaningful" enough "to create a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1864–65. The legal and factual differences between this case and *Farmer*—even if *Farmer* counted as a *Bivens* context—are far from trivial.

        d.     Beyond the appeal to *Farmer*, Marquez offers no reason to find his claims fit within one of the three recognized *Bivens* contexts. The closest is *Carlson*. There, an inmate's estate alleged that prison officials failed to treat the inmate's asthma, resulting in the inmate's death. Specifically, the estate alleged that prison officials kept the inmate in the prison facility "against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative," and unduly

11

delayed his transfer to a hospital. *Carlson*, 446 U.S. at 16 n.1. Marquez's claims here do not relate to the failure to provide medical care, and otherwise bear no resemblance to the circumstances in *Carlson*. Marquez does not argue to the contrary. Nor could he. His case presents a new *Bivens* context.

> 2.  There Are Multiple Rational Reasons—Where Only One Is Needed—to Think Congress is Better Suited to Provide a Damages Remedy Here.

At the second step of the *Bivens* inquiry, Marquez claims there is no reason for this Court to hesitate before creating a new *Bivens* remedy. While the guidance in *Abbasi* alone belies these arguments, *Egbert* upends them completely, making plain that multiple reasons exist to foreclose fashioning a *Bivens* remedy here.

In particular, *Egbert* states that "[t]he *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (cleaned up). This analysis should not be done at "too granular a level," *id.* at 1806, nor is it appropriate for a court to inquire "whether *Bivens* relief is appropriate in light of the balance of circumstances in the particular case." *Id.* (cleaned up). The proper approach requires

12

asking "more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate. If so, or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* (emphasis in original; quoting *Abbasi*). That will be the result "in all but the most unusual circumstances[.]" *Id.* at 1800. This case does not present a "most unusual circumstance"; there are multiple rational reasons to think Congress is better suited to fashion a remedy in the new context presented here.

      a.    BOP's Alternative Remedial Process Is a Standalone Rational Reason That Forecloses Extending *Bivens*.

*Egbert* says plainly that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1858). In *Egbert*, this meant Border Patrol's administrative complaint process foreclosed judicial creation of a *Bivens* claim. *Egbert*, 142 S. Ct. at 1806–07. The Court rejected the argument that the administrative process was inadequate, stating that "[s]o long

as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807; *see also id.* ("[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.").

*Egbert* makes clear that alternative remedial structures available to individuals in Marquez's position equally foreclose his claim here. Those remedies include BOP's administrative remedy program, which *Egbert* itself cited favorably in concluding that the Border Patrol's analogous process precluded extending *Bivens*. BOP's program stems from Congress's directive that "[t]he control and management of Federal penal and correctional institutions[] ... shall be vested in the Attorney General, who shall promulgate rules for the government thereof." 18 U.S.C. § 4001(b)(1). Pursuant to that authority, as outlined in the opening brief, BOP has established a process that "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a); *see also id.* § 542.11(a) (directing that BOP officials "shall[] ... (3) Conduct an investigation into each Request or Appeal"). As the Supreme Court has recognized, these procedures offer a "means through which allegedly unconstitutional

14

actions and policies can be brought to the attention of the BOP and prevented from recurring." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

Here, the district court erred, with Marquez following suit in his answering brief, by questioning whether the remedial processes available to Marquez, including BOP's administrative claims process, could have moved quickly enough to permit him to avoid injury. *See e.g.,* ER-025 ("Without record development as to how soon after housing Plaintiff was attacked or the circumstances surrounding his assault, there is no showing that the administrative procedures at MCC would have been *available* to review the housing decision in time to protect him."). This reasoning—as *Egbert* crystallized—is flawed. The relevant question is not whether the alternative remedy scheme would have prevented the subject injury. To be sure, Boule did not have time in the moment to file an administrative complaint to keep Agent Egbert from allegedly "lift[ing] him off the ground and thr[owing] him against [an] SUV." *Egbert*, 142 S. Ct. at 1801. That did not mean Border Patrol's administrative scheme was inadequate for Boule—the Supreme Court found otherwise. *Id.* at 1807 ("[W]e have no warrant to doubt that the consideration of Boule's grievance against Agent Egbert secured adequate deterrence and afforded

Boule an alternative remedy."). The relevant question is also not "whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief." *Id.* at 1804 (quotations and citations omitted). "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" *Id.*

*Egbert* then supplied the answer to its question: "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 142 S. Ct. at 1807. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."[2] *Id.* Marquez's approach invites— requires, even—the second-guessing that *Egbert* prohibits.

For his arguments, Marquez relies extensively on *Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. 2022). *See* AAB at 26–31. But as noted above, that decision was withdrawn in the wake of *Egbert*.

---

[2] "That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.' *Id. (*quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

*See* 50 F.4th 927. This Court then issued a straightforward memorandum disposition tracking *Egbert* and finding that BOP's review process for inmate complaints foreclosed a *Bivens* claim. *See Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) ("The Supreme Court's decision in *Egbert v. Boule* precludes recognizing a *Bivens* remedy for these allegations. Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' … why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints."). The same analysis applies here.

Finally, with respect to other potential alternative processes such as injunctive or declaratory relief, Marquez again relies on timing to claim those processes would be "insufficient" and not "meaningful." AAB at 30. But again, "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 142 S. Ct. at 1807. Like in *Egbert*, the presence of alternative remedies "independently foreclose[s] a *Bivens* action here." *Id.* at 1806.

17

      b.    The Absence of a *Bivens*-Like Remedy in Extensive Congressional Legislation Is a Standalone Rational Reason That Forecloses Extending *Bivens*.

As outlined in the opening brief, the pervasiveness of legislation surrounding federal prison management is a second standalone reason to hesitate before implying a *Bivens* remedy. Appellant's Opening Brief (AOB) at 34–38; *Abbasi*, 137 S. Ct. at 1865 ("[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."). In response, Marquez interprets this activity to mean Congress has embraced *Bivens* by not overwriting it. *See generally* AAB at 31–36. Marquez fails to respond, however, to the fact that *Abbasi* cited Congress' enactment of the Prison Litigation Reform Act of 1995 for the opposite conclusion:

> So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Abbasi*, 137 S. Ct. at 1865. This Court should hew to the same analysis, particularly fresh on the heels of *Egbert*'s clear instructions that "in all but the most unusual circumstances,

18

prescribing a cause of action is a job for Congress, not the courts[.]" *Egbert*, 142 S. Ct. at 1800. The pervasiveness of prison legislation is at least "a rational reason to think that" Congress "might" be better equipped to create a damages remedy. *Egbert*, 142 S. Ct. at 1803.[3]

> c.  The Potential Burdens on BOP and BOP Employees Is a Standalone Rational Reason That Forecloses Extending *Bivens*.

The opening brief outlines the ways in which extending a *Bivens* remedy here would burden the BOP and its individual employees in running the federal prison system. AOB at 38–42. *Egbert* underscores this is a rational reason foreclosing a *Bivens* remedy. "Even in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*. That uncertainty *alone* is a special factor that forecloses relief." *Egbert*, 142 S. Ct. at 1803–04 (citations omitted) (emphasis added).

In response, Marquez falls back on *Farmer* and *Carlson* to claim there will be no undue burden because *Bivens* already extends to his claims. As addressed above in the analysis of the first

---

[3] Marquez also picks at specific provisions which may or may not explicitly apply to pre-trial detainees. But the point—which Marquez cannot deny—is that Congressional action permeates this area.

step of the *Bivens* framework, he is wrong. Otherwise, in cursory fashion, Marquez cites website statistics to claim no additional burden will be placed on BOP or its employees if *Bivens* was extended.

As an initial matter, Marquez's appeal to statistics proves the point that the weighing of data, costs, and impacts is part of the "range of policy considerations" that goes into creating a cause of action—something "Congress is far more competent than the Judiciary" to do. *Egbert*, 142 S. Ct. at 1802–03 (quotation omitted). In any event, in *Egbert*, the Court stated that "[r]ecognizing any new *Bivens* action entails substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." 142 S. Ct. at 1807 (cleaned up). The Court then declined to extend *Bivens* to alleged First Amendment violations because that "would pose an acute risk of increasing such costs." *Id.* "A plaintiff can turn practically any adverse action into grounds for a retaliation claim. And, because an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on retaliatory intent may be less amenable to summary disposition." *Id.* (cleaned up).

In light of these realities, *Egbert* found "[u]ndoubtedly" that the "prospect of personal liability under the First Amendment

20

would lead to new difficulties and expense." *Id.* (cleaned up). "Federal employees faced with the added risk of personal liability for decisions that they believe to be a correct response to improper activity would be deterred from carrying out their duties." *Id.* (cleaned up). The Supreme Court was therefore "convinced" that Congress was better positioned to decide whether to impose a *Bivens* remedy. *Id.*

This same analysis applies here. With *Bivens* extended as this case would require, BOP officers' personal assets would be on the line from the moment a detainee first presented for intake. New detainees could hold undue sway with initial housing decisions, knowing BOP officers would be wrestling with the prospect of *Bivens* liability by not acquiescing to even non-particularized special housing requests. Moreover, any in-custody injury could form the basis of a *Bivens* lawsuit, based solely on allegations that the injured detainee once told an officer that failing to house the inmate differently could result in inmate-on-inmate harm. *See Egbert*, 142 S. Ct. at 1807 ("Even a frivolous retaliation claim threatens to set off broad-ranging discovery in which there is often no clear end to the relevant evidence.") (cleaned up). In other words, like in *Egbert*, BOP employees would be deterred from performing

their duties if each housing decision carried the added risk of personal liability.

Additionally, future claims would probe the boundaries of this new *Bivens* context, raising questions of what categories of sex charges, or perhaps any inflammatory characteristic of an inmate, might also qualify for special housing placement. This conflux of issues underscores *Egbert*'s clear message that "creating a cause of action is a legislative endeavor," requiring evaluation of a "range of policy considerations" including economic concerns, administrative costs, and the impact on governmental operations systemwide. *Egbert*, 142 S. Ct. at 1802.

This case presents significant uncertainty about the potential consequences of extending *Bivens* relief to cover Marquez's claim. That uncertainty alone forecloses doing so. *See Calix v. Pope*, No. 18-CV-3980-RPK-PK, 2022 WL 4539511, at *5 (E.D.N.Y. Sept. 28, 2022) ("[P]rison housing placements and inmate separations involve complicated, policy-laden tradeoffs about housing resources, as well as difficult predictions of future risk. Given the complexity of that decision-making, a court is ill-placed to "predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*" against the officials who make these decisions.").

> d. The Difficulty of Devising a Workable Cause of Action Is a Standalone Rational Reason That Forecloses Extending *Bivens*.

The opening brief explains that the unworkability of the proposed *Bivens* extension is also a special factor that counsels hesitation. AOB 42–46. Marquez responds only to say that prior *Bivens* claims have not been unworkable, and that allowing his claim to proceed would "simply maintain the status quo." AAB at 37. But no case extends *Bivens* to the context here, which would effectively create a de facto requirement to provide protective custody to detainees charged with crimes like Marquez.

And it would not stop there—the opening brief cites a list of "knotty" issues that would encumbrance BOP and the courts if *Bivens* were cognizable on the facts here. Injecting *Bivens* into something as basic as prisoner housing requests would carve deeply into the "wide-ranging deference" prison officials necessarily have to "adopt[] and execut[e] … policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Olivier v. Baca*, 913 F.3d 852, 858 (9th Cir. 2019); *see also Turner v. Safley*, 482 U.S. 78, 84–85 (1987) ("Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the

legislative and executive branches of government."). Marquez does not respond to those concerns.

Individually and in the aggregate, this case presents "rational reasons"—where only one is needed—to think Congress is better suited to weight the costs and benefits of allowing a damages action to proceed. Any finding to the contrary necessarily violates *Egbert*'s caution against applying the special-factors analysis at "too granular a level." *Egbert*, 142 S. Ct. at 1806. Like in *Hoffman*, the Court should decline to find this is "the most unusual circumstance" permitting the judiciary to prescribe a cause of action.

B. The District Court Erred By Failing to Dismiss Marquez's *Bivens* Claims on Qualified Immunity Grounds.

Finally, separate from the *Bivens* inquiry, Appellants are both entitled to qualified immunity as the facts alleged do not establish they violated a clearly established constitutional right. To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The Supreme Court has repeatedly cautioned [this Court] 'not to define clearly established law at a high level of generality.'" *Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021) (quoting *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503

(2019)). And when there is no sufficiently similar case, there can be no deprivation of a clearly established right. *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1024 (9th Cir. 2020) ("Therefore, because we cannot find a case with sufficiently similar facts, we cannot say that Sampson's right to be free from sexual harassment at the hands of a social worker was clearly established under the Supreme Court's impossibly high bar.").

In response, Marquez frames the "clearly established constitutional right" as the "right to be protected from a substantial risk of serious harm at the hands of other detainees." AAB at 38–39. But that is exactly the high level of generality which the Supreme Court forbids. For instance, in *Emmons*, this Court had "defined the clearly established right at a high level of generality by saying only that the 'right to be free of excessive force' was clearly established." 139 S. Ct. at 503. The Supreme Court found this "formulation of the clearly established right was far too general." *Id.* Instead, the proper analysis must "explain how … case law prohibit[s] [the officer's] actions in this case." *Id.* at 503–04; *see id.* at 504 ("The Court of Appeals failed to properly analyze whether clearly established law barred [the officer] from stopping and

taking down … Emmons in this manner as Emmons exited the apartment.").

Marquez cites *Farmer* as the case which clearly establishes the right at issue here. But *Farmer*—as Appellants previously outlined, *see* AOB at 52—is readily distinguishable from the facts here and does not clearly establish that failing to provide special housing to inmates charged with certain crimes is unconstitutional "beyond debate." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). Otherwise, Marquez fails to cite a case sufficiently similar to the facts here to provide Appellants specific notice that their conduct was unconstitutional. *See, e.g., Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 9 (2021) ("On the facts of this case, [no] … decision of this Court is sufficiently similar. For that reason, we …  reverse the Ninth Circuit's determination that Rivas-Villegas is not entitled to qualified immunity.").

Even in the absence of a prior case, Marquez argues that inmates "labeled" as sex offenders are "plainly" vulnerable such that placing them in general population clearly deprives them of a constitutional right. AAB at 44–45. No precedential case stands for that proposition. The lone Ninth Circuit case he cites involved the State of Hawaii's Sex Offender Treatment Program, which labeled inmates sex offenders and compelled their participation in the

treatment program as a precondition to eligibility for parole. *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997). *Neal* bears no resemblance to the facts or legal issues presented here. The other cases Marquez cites involve affirmative acts by a detention facility to "label" an inmate a sex offender, such as where a facility forced an inmate to wear a jumpsuit that identified him as a sex offender to the entire prison population, *see, e.g., Morris v. Burrkhouse*, Case No. 19-CV-5839-SVW-KK, 2021 WL 2119497 at *2 (C.D. Cal. March 24, 2021).

That is not this case. Marquez does not allege that any BOP employee labeled Marquez a sex offender or revealed anything about Marquez to other inmates. Marquez does not even allege that other inmates knew the charges against him. That Marquez was "forced" to do squats—as opposed to assaulted or otherwise violently accosted—does not establish that other inmates knew he was charged with a sex offense, intended to send him to the hospital with injuries, or otherwise had an ongoing vendetta against him. On the contrary, the fact that Marquez was not assaulted after his return to general population suggests otherwise and undercuts Marquez's claims of certain injury if placed in general population.

Marquez further claims Appellant Kelly clearly violated his constitutional rights by placing him back in general population

27

after Marquez's return from the hospital. He argues that, at that point, Kelly "knew that the risk of violence … had in fact been realized." AAB at 49. But that significantly overextends Marquez's allegations. In the amended complaint, Marquez alleges that he told Kelly that "he had previously been negligently housed and as a result he was injured by other inmates." ER-109. Marquez does not allege he told Kelly that these inmates said anything to suggest they had an ongoing vendetta against him. He does not allege the inmates told him they had found out that he was charged with a sex offense. Assuming Marquez informed Kelly about the squatting incident, no precedent required Kelly to infer: (1) that the forced squatting amounted to an "attack," (2) that inmates forced Marquez to squat *because* they were aware he was charged with a sex offense, (3) that the forced squatting was related to any prior "negligent" housing decision, or (4) that the forced squatting established "beyond debate" that Marquez faced an ongoing excessive risk to his health or safety by being placed in general population. *See Davis v. Scott*, 94 F.3d 444, 445–47 (8th Cir. 1996) (no identifiable risk of serious harm where inmate told officials that friends of his departed enemy might try to harm him if moved to general population).

As this Court has articulated, "the question in this case must be: viewing the evidence in the light most favorable to [Marquez],

was it 'beyond debate,' at the time [Kelly] acted, that [Kelly's] conduct violated the Constitution?" *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). The answer is no. On the facts alleged, Kelly's judgment was not constitutionally constrained to just one conclusion, e.g., ordering special housing for Marquez. Rather, Kelly retained discretion as to where to house Marquez. And Kelly's ultimate judgment was not wrong: Marquez was not attacked or assaulted after being placed back in general population.

Based on the allegations in Marquez's complaint, it is far from "sufficiently clear that *every* reasonable official would have understood that [placing Marquez in general population]" violate[d] [Marquez's Fifth Amendment right]." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (emphasis added); *see Hamby*, 821 F.3d at 1094 ("[E]ven when the evidence is viewed in the light most favorable to [the plaintiff], we cannot say that only someone plainly incompetent or who knowingly violates the law would have acted as the officials here did.") (cleaned up). Accordingly, Appellants are both entitled to qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

29

**CONCLUSION**

This Court should reverse the district court's order and hold there is no *Bivens* remedy for Marquez's claims and that Appellants are entitled to qualified immunity.

Respectfully submitted,

RANDY S. GROSSMAN
  *United States Attorney*

KATHERINE L. PARKER
  *Assistant U.S. Attorney*
  *Chief, Civil Division*

s/COLIN M. MCDONALD
  *Assistant U.S. Attorney*

JANUARY 17, 2023

30

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-55981

I am the attorney or self-represented party.

**This brief contains** | 6,200 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Colin M. McDonald    **Date** | Jan 17, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**          *Rev. 12/01/2018*