# No. 21-55981

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

═══════════════

**STEVE MARQUEZ,**
*Plaintiff-Appellee,*

*v.*

**C. RODRIGUEZ and L. KELLY,**
*Defendants-Appellants.*

═══════════════

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
CASE NO. 3:18-CV-0434-CAB-NLS

═══════════════

## APPELLEE'S SUPPLEMENTAL BRIEF

═══════════════

**RIGHTS BEHIND BARS**
D DANGARAN
OREN NIMNI
SAMUEL WEISS
416 Florida Avenue NW #26152
Washington, D.C. 20001
(202) 455-4399

**UCLA SCHOOL OF LAW**
**PRISONERS' RIGHTS CLINIC**
AARON LITTMAN
385 Charles E. Young Drive E
Los Angeles, California 90095
(310) 825-9562

COUNSEL FOR PLAINTIFF-APPELLEE
**STEVE MARQUEZ**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ II

TABLE OF AUTHORITIES ........................................................................ III

INTRODUCTION .......................................................................................... 1

ARGUMENT................................................................................................... 2

I.  *Egbert* does not change the analytical framework. ....................... 2

II.  **This case does not present a new *Bivens* context.**............................ 4

  A.  This case directly applies *Carlson* and *Farmer*.............................. 4

  B.  Appellee's pretrial detainee status is not a meaningful difference................. 6

III.  **This Court should affirm the district court's step-two analysis.** ................. 7

CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018).......................................................... 5, 7

*Bulger v. Hurwitz*, --- F.4th ----, 2023 WL 2335958 (4th Cir. Mar. 3, 2023) .......... 5

*Bush v. Lucas*, 462 U.S. 367 (1983) ....................................................... 2, 4

*Carlson v. Green*, 446 U.S. 14 (1980) .................................................... 3, 4

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) .............. 7

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)................................................ 5, 9

*Egbert v. Boule*, 142 S. Ct. 1793 (2022)........................................................... passim

*Farmer v. Brennan*, 511 U.S. 825 (1994)................................................................. 3

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ............................................. 6, 10

*Hernández v. Mesa*, 137 S. Ct. 2003 (2017)........................................................... 5

*Hernández v. Mesa*, 140 S. Ct. 735 (2020)........................................................... 3, 8

*Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. 2022) ("*Hoffman I*") ......................... 9

*Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022)
   (unpublished) ("*Hoffman II*")........................................................................ 1, 9

*Wilkie v. Robbins*, 551 U.S. 537 (2007) .................................................... 4

*Ziglar v. Abbasi*, 582 U.S. 120 (2017)............................................................. passim

**INTRODUCTION**

In *Egbert v. Boule*, 142 S. Ct. 1793 (2022), the Supreme Court rearticulated the standard for extending a *Bivens* remedy to a new context. Appellants overstate the impact of *Egbert*. Neither the opinion in *Egbert* nor this Court's revised decision in *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022) (unpublished) ("*Hoffman II*"), alter the appropriate analysis or result in this case.[1]

Prior to *Egbert*, courts evaluated *Bivens* cases using a two-step analysis. *See Ziglar v. Abbasi*, 582 U.S. 120, 140, 144 (2017). In step one, the court determines whether the case presents a new *Bivens* context. *Id.* at 136. If so, the court turns to step two, at which it assesses whether any special factors counsel hesitation before finding that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.*

*Egbert* neither changed this test nor influences the outcome here. This case does not present a new *Bivens* context. Therefore, this Court need not reach step two and should decide this matter in accordance with precedent and the reasoning of sister circuits. If this Court does reach step two, it should affirm; nothing in *Egbert* displaces the district court's analysis in this case.

---

[1] This Court held the proceedings of the present case in abeyance pending the issuance of the mandate in *Hoffman*. Dkt. 25, 30. Once the stay was lifted, Appellants filed their Reply Brief, which discusses *Egbert* at length. Dkt. 34.

**ARGUMENT**

## I.    *Egbert* does not change the analytical framework.

*Egbert* underscores the stringency of the *Bivens* framework, but it does not alter the test. Although the Court indicated that the previously articulated two-step inquiry may "often resolve to a single question," *Egbert*, 142 S. Ct. at 1803, the Court applied the two discrete steps, *see id.* at 1804–09. That two-step inquiry is thus the appropriate process here. *Egbert*'s inquiry into whether the Judiciary or Congress is "better equipped to create a damages remedy," *id.* at 1803, has been a central part of the doctrine from the start. *See Bush v. Lucas*, 462 U.S. 367, 380 (1983) ("The special factors counselling hesitation in the creation of a new remedy ... related to the question of who should decide whether such a remedy should be provided."); *see also Abbasi*, 582 U.S. at 135 ("When a party seeks to assert an implied cause of action under the Constitution itself, ... separation-of-powers principles are or should be central to the analysis. The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" (quoting *Bush*, 462 U.S. at 380)). This "single question" is useful for understanding the "principles" at play, *Egbert*, 142 S. Ct. at 1803–04, but it has not replaced the well-worn two-step inquiry.[2]

---

[2] Because *Abbasi* was not "explicitly overruled" by *Egbert*, this Court is still "bound to follow" the *Abbasi* framework. *See Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) (citation omitted).

*Bivens* step one asks whether the case at hand is meaningfully different from the cases in which the Court has implied a damages action. *Id.* at 1803. *Egbert* does not change this inquiry. *See id.* at 1804, 1807 (holding that the Fourth and First Amendment claims arose in a new context, then continuing to step two). Thus, *Egbert* has no impact on Appellee's argument that his claim is an application of *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 825 (1994). *See* Answering Br. 17–25.

*Egbert* does not change step two either. The Court applied step two and, in doing so, effectively restated the inquiry set forth in *Abbasi*. *See Egbert*, 142 S. Ct. at 1805 ("A court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" (quoting *Abbasi*, 582 U.S. at 136)); *see also id.* at 1805–06. One purported change is that after *Egbert*, it is "categorically impermissible" for courts to weigh the costs and benefits of allowing a damages action to proceed. *Id.* at 1818 (Sotomayor, J., dissenting). But this is not a change in the doctrine. The special-factors analysis in *Bivens* step two has always been a search for "even a single 'reason to pause before applying *Bivens* in a new context.'" *Id.* at 1803 (majority) (quoting *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020)). The inquiry is whether any factors counsel the court to defer to Congress, not whether the factors weigh for or against finding an implied damages claim. *See Wilkie v.*

3

*Robbins*, 551 U.S. 537, 562 (2007); *Bush*, 462 U.S. at 389–90. *Abbasi* held that the "proper balance is one for the Congress, not the Judiciary, to undertake." 582 U.S. at 146. *Egbert* did not diverge from *Abbasi* by holding that courts cannot "independently assess the costs and benefits of implying a cause of action." 142 S. Ct. at 1805 (reversing a decision that (1) weighed the costs of the new *Bivens* claim and the compelling interests and (2) determined a damages remedy was implied).

**II. This case does not present a new *Bivens* context.**

**A. This case directly applies *Carlson* and *Farmer*.**

There is no extension of *Bivens* at issue here. Whereas *Egbert* dealt with clear extensions of *Bivens* into the contexts of Fourth Amendment excessive force and First Amendment retaliation claims arising at the border, this case simply applies *Carlson* and *Farmer* on well-trodden ground: the domestic prison context.

*Carlson* described the petitioner's claim as a "violation of the Eighth Amendment's proscription against infliction of cruel and unusual punishment," 446 U.S. at 17, and discussed the lack of "explicit congressional declaration that persons injured by federal officers' violations of the Eighth Amendment may not recover money damages from the agents," *id.* at 19. The remedy in *Carlson* is not limited to medical deliberate indifference claims but establishes a damages action against federal officers for cruel and unusual punishment, more broadly.

4

*Farmer* reaffirms this reading of *Carlson* and is the controlling example of an application of *Carlson* that extends beyond medical deliberate indifference. Appellant argues that the "Supreme Court did not find that the claim [in *Farmer*] was a viable *Bivens* claim." Reply Br. 5. But this argument cannot be logically squared with existing doctrine, which treats a plaintiff's ability to bring a *Bivens* claim as "'antecedent' to the other questions presented." Answering Br. 21 (quoting *Hernández v. Mesa*, 137 S. Ct. 2003, 2006 (2017)). The Third Circuit agrees. *See Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) ("Although the *Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim, it not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length 'deliberate indifference' as the legal standard to assess a *Bivens* claim."). The plaintiff in *Farmer* based her *Bivens* claim on *Bivens* and *Carlson*.[3] Answering Br. 18–21. So does Mr. Marquez.

---

[3] The Fourth Circuit recently held in *Bulger v. Hurwitz*, --- F.4th ----, 2023 WL 2335958 (4th Cir. Mar. 3, 2023), that because the Supreme Court "has never listed *Farmer* when compiling *all* of its *Bivens* cases," the plaintiff's failure-to-protect claims presented a new context. *Id.* at *5. *Bulger* was wrongly decided. Its effort to distinguish *Bistrian* is unconvincing. *Egbert* and *Hernández* did not change the step-one analysis and were not the first cases to identify the canonical three cases. *See Abbasi*, 582 U.S. at 131 ("These three cases—*Bivens*, *Davis*, and *Carlson*— represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67, 74 (2001) (listing the three cases and cautioning any extension into new contexts). *Bistrian* was decided after *Abbasi*, yet the Third Circuit held that *Farmer* did not create a new context. *Bulger*'s same logical failure undermines its step-two analysis as well as it relies on the purported novelty of the failure-to-protect claim.

The district court erred when it alluded to the "differences between failure to protect a prisoner based on sexual characteristics in *Farmer* and the claims here." ER17. Appellants adopt this error. Reply Br. 10–11. This Court has declined to read Eighth Amendment *Bivens* claims so narrowly. For example, in *Gillespie v. Civiletti*, decided before *Farmer*, this Court held that the plaintiff had an implied damages action "because other prisoners had threatened his life" and he was not protected. 629 F.2d 637, 639 (9th Cir. 1980). This precedent is a clear instruction from this Court that *Carlson* reaches beyond medical cases; if the *Gillespie* plaintiff's claim that the defendants "failed to provide him adequate protection from beatings and sexual attacks" is an application of *Carlson*, *id.* at 642, so too is Marquez's claim.

### B. Appellee's pretrial detainee status is not a meaningful difference.

Appellants argue that *Egbert* and *Abbasi* foreclose Appellee from finding relief at step one because "a new context arises when there is a new 'constitutional right at issue.'" *Egbert*, 142 S. Ct. at 1807 (quoting *Abbasi*, 582 U.S. at 140). First, the *Egbert* Court applied this rule in deciding that a First Amendment retaliation claim presented a new context. That claim is substantively different from the three recognized contexts. Conversely, no new merits claim is at issue here.

Second, the fact that Appellee's claim derives from the Fifth Amendment does not make it "different in a meaningful way" from the Eighth Amendment claim at issue in *Carlson* or *Farmer*, and does not call for an extension of *Bivens*. *Abbasi*,

582 U.S. at 140. *Abbasi* pointed out that that a conditions-of-confinement claim "predicated on the Fifth" Amendment differs from *Carlson*, which "was predicated on the Eighth Amendment." *Id.* at 148. But the *Abbasi* Court did not conclusively determine that Fifth Amendment conditions-of-confinement claims are always "meaningfully different" from such claims brought under the Eighth Amendment. This Court should adopt the Third Circuit's persuasive reasoning in this context. "[I]t is a given that the Fifth Amendment provides the same, if not more, protection for pretrial detainees than the Eighth Amendment does for imprisoned convicts." *Bistrian*, 912 F.3d at 91. Where the Fifth Amendment provides an almost identical but more protective standard than the Eighth Amendment, *see Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068–71 (9th Cir. 2016) (en banc), it would defy logic to determine a pretrial detainee's remedies are meaningfully different from—or rather, less than—a convicted prisoner's remedies. *See* Answering Br. 24–25 (arguing that the Fifth Amendment standard is subsumed within the Eighth Amendment standard and that until *Castro*, the standards were the same).

### III. This Court should affirm the district court's step-two analysis.

Even if this Court holds that the case presents a new context, it should find that a modest extension is warranted because no special factors counsel hesitation before recognizing a new cause of action. A damages award under *Bivens* is the only way to vindicate Appellee's claim. *Egbert* does not change the analysis of this step.

7

First, *Egbert* arose in the national-security context, which the Supreme Court had previously held counseled significant hesitation. The special factors in the Fourth Amendment claim in *Egbert* pertained to the excessive force used by Border Patrol agents. The Court had previously declined to create a damages remedy in light of the border-security context in *Hernández*. *See Egbert*, 142 S. Ct. at 1804–05. There, the Court discussed the foreign-policy and national-security implications of a cross-border shooting as the purview of the Executive Branch. *Hernández*, 140 S. Ct. at 744–47. *Egbert*'s ruling does not control the domestic pretrial detention context at hand.

When assessing the Fourth Amendment claim, *Egbert* also looked to the alternative remedies provided by the Executive Branch. The plaintiff argued the administrative "grievance process is inadequate because he is not entitled to participate and has no right to judicial review of an adverse determination." *Egbert*, 142 S. Ct. at 1806. The Court held that "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id.* at 1807. But the question of a remedy's adequacy is not at issue here; rather, the district court addressed a predicate question, finding that the BOP grievance procedure was not proven to be *available* to Appellee at all. ER25–26. This reasoning should stand even under *Egbert*; an unavailable remedy could not be "sufficient to secure an adequate level of deterrence." *Egbert*, 142 S. Ct. at 1807.

8

Here, the BOP did not "put in place safeguards" to prevent this constitutional violation from occurring. *Id.* at 1806. Appellee "was placed in peril immediately after undergoing each classification interview and tortured by prisoners 'soon after being housed' by Defendant Rodriquez." Answering Br. 28 (quoting ER104). No administrative grievance could have changed this.

And there is good reason to conclude that Congress did not intend for the BOP process to displace *Bivens* remedies in this context.[4] When Congress passed the Prison Litigation Reform Act (PLRA), it did not intend to abrogate *Bivens* claims

---

[4] Although Appellees discuss *Hoffman II* in their Reply Brief, Dkt. 34 at 2–3, 24, it is unpublished and therefore has no precedential value. This Court can decide this case without reference to *Hoffman II*. But to the extent that this Court will view its reasoning as instructive, it does not control this case.

First, *Hoffman II*'s conclusion that "the existence of the Bureau of Prisons' formal review process for inmate complaints" was an alternative remedy does not dictate the result of the step-two inquiry in this case. *Hoffman II*, 2022 WL 6685254, at *1. The plaintiff there was abused and harassed by a correction officer over a period of months. *See Hoffman v. Preston*, 26 F.4th 1059, 1061–62 (9th Cir. 2022) ("*Hoffman I*"). He could have brought an administrative grievance during that period to obtain some relief. The timing of Mr. Marquez's injury made any such effort impossible.

Second, as discussed above, Congress's passage of the Prison Litigation Reform Act does not indicate that it intended to abrogate a damages remedy. In fact, it indicates the opposite, as it was explicitly passed against the backdrop of existing *Bivens* remedies. Supreme Court precedent makes it clear that an administrative grievance process is not "a remedial process that [Congress] finds sufficient to secure an adequate level of deterrence" against harm caused by individual federal officers. *Egbert*, 142 S. Ct. at 1807; *see Abbasi*, 582 U.S. at 144 (discussing "damages actions after the fact" as the remedy for harms caused by the actions of individual federal officers); *Malesko*, 534 U.S. at 70 ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations.").

with the exhaustion requirement, but rather to deter frivolous *Bivens* actions. Answering Br. 31–32. Further, Congress passed the PLRA a year after *Farmer* was decided, and thus it understood that federal prisoners might bring failure-to-protect *Bivens* claims. In short, there were no alternative remedies available here.

Appellants' other proposed reasons to foreclose an implied damages action here—the potential burdens on the BOP and the difficulty of devising a workable cause of action—are also unavailing. Reply Br. 19–24. *Egbert*'s discussion of the "fear of personal monetary liability" in the First Amendment context is simply not at play here given BOP officers' longstanding awareness of their duty to protect incarcerated people from a substantial risk of serious harm under the deliberate indifference standard. *Egbert*, 142 S. Ct. at 1807. And *Egbert* does not change the fact that *Bivens* claims have not only been an available cause of action in the failure-to-protect context for over forty years, *see Gillespie*, 629 F.2d at 642, but are understood by Congress and the courts as a necessary deterrent to harmful actions by individual federal officers, Answering Br. 37.

## CONCLUSION

This court should affirm or, in the alternative, remand for the district court to reapply the step-two inquiry under the *Egbert* framework in the first instance.

Respectfully submitted,

/s/ D Dangaran
D Dangaran
Oren Nimni
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Ave. NW #26152
Washington, D.C. 20001
(202) 455-4399

/s/ Aaron Littman
Aaron Littman
UCLA SCHOOL OF LAW
PRISONERS' RIGHTS CLINIC
385 Charles E. Young Drive E
Los Angeles, California 90095
(310) 825-9562

Date: March 13, 2023

11

## CERTIFICATE OF COMPLIANCE

I certify that: This brief complies with the type-volume limitation of this Court's order, Dkt. No. 43, because this brief contains 2,689 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

/s/ D Dangaran
D Dangaran
Rights Behind Bars
416 Florida Ave. NW #26152
Washington, D.C. 20001

## CERTIFICATE OF SERVICE

I, D Dangaran, hereby certify that on March 13, 2023, I electronically filed the foregoing motion with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: March 13, 2023

/s/ D Dangaran
D Dangaran
Rights Behind Bars
416 Florida Ave. NW #26152
Washington, D.C. 20001

13