**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVE MARQUEZ, | No. 21-55981 |
| *Plaintiff-Appellee*, | D.C. No. 3:18-cv-00434-CAB-NLS |
| v. | |
| C. RODRIGUEZ, Correctional Officer at M.C.C. Federal Prison; L. KELLY, Correctional Officer at M.C.C. Federal Prison, | OPINION |
| *Defendants-Appellants*, | |
| and | |
| UNITED STATES OF AMERICA; FEDERAL BUREAU OF PRISONS; DAVID L. YOUNG, Warden of M.C.C. Federal Prison; DOES, John Doe #1 Classification Official; Jane Doe #1 Classification Officer; Supervisor John Doe #2 Prison Guard, | |
| *Defendants*. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted April 12, 2023
Pasadena, California

Filed September 6, 2023

Before: William A. Fletcher, Kenneth K. Lee, and
Salvador Mendoza, Jr., Circuit Judges.

Opinion by Judge Lee;
Concurrence by Judge W. Fletcher

## SUMMARY[*]

### Prisoner Civil Rights/*Bivens*

In an action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that federal correctional officials failed to protect plaintiff from other detainees at a jail, the panel reversed the district court's denial of defendants' motion to dismiss and declined to extend a *Bivens* action to include a Fifth Amendment failure-to-protect claim.

When a party seeks to bring a *Bivens* action, courts apply a two-step test: whether the case presents a new *Bivens*

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

context, and, if so, whether there "special factors" that counsel against extending *Bivens.*

Applying the first step, the panel held that this case presents a new *Bivens* context that the Supreme Court has not recognized in its *Bivens* jurisprudence. The panel declined to recognize an implied *Bivens* context arising from *Farmer v. Brennan*, 511 U.S. 825 (1994), which involved an Eighth Amendment failure-to-protect claim by a female-presenting transsexual individual who was assaulted by other inmates. The panel noted that nearly thirty years have passed since the Supreme Court decided *Farmer* and if the Court were inclined to recognize it as one of the few acceptable *Bivens* contexts, it would have done so. The panel further determined that plaintiff's claim was meaningfully distinguishable from *Farmer*, which involved an Eighth Amendment rather than a Fifth Amendment claim, alleged a different category of harm, and arose in a different factual setting.

Applying the second step, the panel held that special factors counsel against extending *Bivens* to this case. The legislature and executive were best positioned to address plaintiff's interest, and have, in fact, provided alternative remedies through administrative review procedures offered by the Board of Prisons. Accordingly, the panel declined to overstep its constitutional role to create a new damages action.

Concurring in the judgment, Judge W. Fletcher explained that a state prisoner making the same factual allegations as plaintiff states a cause of action for damages. Denying a damages remedy to a federal prisoner while granting it to a state prisoner in the same circumstance is a miscarriage of justice.

## COUNSEL

Colin M. McDonald (argued) and George V. Manahan, Assistant United States Attorneys; Katherine L. Parker, Assistant United States Attorney, Civil Division Chief; Randy S. Grossman, United States Attorney; United States Department of Justice, Southern District of California, San Diego, California; for Defendants-Appellants.

D. Dangaran (argued), Oren Nimni and Samuel Weiss, Rights Behind Bars, Washington, D.C.; Hope Bentley and Ronak Patel, Certified Law Students; Aaron Littman, Supervising Attorney; UCLA School of Law Prisoners' Rights Clinic, Los Angeles, California; for Plaintiff-Appellee.

---

## OPINION

LEE, Circuit Judge:

We address whether a plaintiff—who alleges that federal correctional officers failed to protect him from other detainees in a jail—can seek damages against them based on the Fifth Amendment's due process clause. *See generally Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). We hold that he cannot and decline to extend a *Bivens* action to include a Fifth Amendment failure-to-protect claim.

Invoking separation-of-powers principles, the Supreme Court has repeatedly held that Congress, not the courts, should typically decide whether to extend an implied damages action against federal officials. This case is no

different, as it presents a factual and legal context that the Supreme Court has not recognized in its *Bivens* jurisprudence. And under this new context, Congress is better suited than the judiciary to assess policy judgments involved in expanding an implied cause of action against federal officials. For example, this case implicates the Bureau of Prisons' policy of deciding which detainees should be placed in protective custody, given strapped resources and limited space. We thus reverse the district court's denial of the correctional officers' motion to dismiss.

## BACKGROUND[1]

### I. While Jailed as a Pretrial Detainee, Steve Marquez Suffers Injuries After Jail Officials Deny His Request for Protective Custody.

In 2016, Steve Marquez was booked into a federal corrections center in San Diego for an alleged sex offense. Given the nature of his charges, Marquez requested protective custody. Jail officials, however, declined his request, instead placing him in general population. According to Marquez, the officials made sarcastic comments such as "what a great guy" and "what an upstanding citizen." And one official allegedly handed Marquez an emergency contact form—stating, "this is for when something happens to you in prison"—while another supposedly advised Marquez to lie to other inmates about the nature of his charges. Marquez does not allege, however, that any of the other inmates were in fact aware of the nature of his charges.

---

[1] Because this appeal comes to us from the denial of a motion to dismiss, we accept as true all facts alleged in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Shortly after entering general population, Marquez began to have trouble with a group of fellow inmates. One inmate allegedly told Marquez, "we are going to break you." Another told him that if he did not do everything the group commanded, they would "take care of him."

It is unclear whether these inmates targeted Marquez because of his status as an alleged sex offender or as part of a hazing ritual, as none of the inmates mentioned Marquez's charges. Whatever the reason, Marquez's harassment continued to escalate. At some point, the inmates forced Marquez to exercise to the point of collapse, leading to serious medical complications requiring hospitalization.

Following his hospitalization, officials returned Marquez to the jail's general population over his objection. He remained there for about a month before being transferred to protective custody in state prison. During this time, Marquez continued to suffer emotional and physical distress, but he did not have any further encounters with his former harassers.

## II. The District Court Denies the Officers' Motion to Dismiss Marquez's Complaint Against Them.

Marquez filed suit under *Bivens* against two jail classification officers in their individual capacities. His complaint alleges that the officers were deliberately indifferent to a substantial risk of serious harm when they declined Marquez's requests for protective custody—first despite knowing the risks tied to the nature of his sex-related charges and later after knowing that he had suffered harm at the hands of the other inmates. Because Marquez was a pretrial detainee—rather than a prisoner—at the time, the district court construed his claim as arising under the Due Process Clause of the Fifth Amendment rather than under the

Eighth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

The officers moved to dismiss the complaint, contending that Marquez did not state a viable *Bivens* claim.  The district court denied the motion.  Although the district court found that Marquez's claim presented a "new *Bivens* context," it concluded that an extension of *Bivens* could be warranted in his case.

## DISCUSSION

The district court erred in determining that Marquez's *Bivens* claim could proceed.  In *Bivens*, the Supreme Court recognized an implied cause of action against federal officials for Fourth Amendment violations.  Since then, the Supreme Court has extended *Bivens* exactly twice:  In *Davis v. Passman*, 442 U.S. 228 (1979), the Court permitted an administrative assistant to seek a damages remedy against her former employer, a congressman, for alleged sex discrimination in violation of the Fifth Amendment.  And in *Carlson v. Green*, 446 U.S. 14 (1980), the Court recognized a *Bivens* remedy in an action brought by a federal prisoner's estate contending that prison officials infringed the Eighth Amendment's Cruel and Unusual Punishment Clause by failing to provide adequate medical treatment.

Apart from those cases, however, the Supreme Court has repeatedly and expressly confined *Bivens* claims, holding that an extension of implied causes of action is recognized today as "a 'disfavored' judicial activity."  *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Now, when a party seeks to bring a *Bivens* action, we proceed in two steps.  "First, we ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the

Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1859–60). If a case presents a new *Bivens* context, then we examine whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136). These steps will "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* If so, then we may not allow the *Bivens* claim to proceed.

In practice, the Supreme Court's stringent test will foreclose relief in all but the most extraordinary cases. *See id.* at 1800, 1803; *see also id.* at 1809–1810 (Gorsuch, J., concurring). And while the Court has thus far "stop[ped] short of overruling *Bivens* and its progeny," *id.* at 1823 (Sotomayor, J., concurring), it has cabined the doctrine to the facts of three decades-old cases. *See Hernández v. Mesa*, 140 S. Ct. 735, 751–53 (2020) (Thomas, J., concurring) (citing *Abbasi*, 582 U.S. at 135–36).

Because Marquez's claim fails to surmount this strict standard, we conclude that he does not have a viable *Bivens* action. We thus reverse the district court.

## I. This Case Presents a New *Bivens* Context.

The district court correctly concluded that Marquez's claim arises in a new *Bivens* context. As we noted above, "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 582 U.S. at 131. Marquez cannot show that his Fifth Amendment failure-to-protect claim fits within the context of one of these three cases.

Marquez argues that *Carlson* allows a pretrial detainee to bring a failure-to-protect claim under *Bivens*. He does not argue that *Carlson* itself provides that remedy, however. Nor could he, as *Carlson* addressed a withholding medical care claim, not a failure-to-protect claim as in here. 446 U.S. at 16–17 & n.1; *see also Bulger v. Hurwitz*, 62 F.4th 127, 138 (4th Cir. 2023). Instead, he leans on *Farmer v. Brennan*, 511 U.S. 825 (1994).

In *Farmer*, the Supreme Court considered an Eighth Amendment failure-to-protect claim brought under *Carlson* by a female-presenting, "transsexual" individual who was assaulted by other inmates after being transferred to general population. Although *Farmer* centered on the definition of "the term 'deliberate indifference,'" *id.* at 829, Marquez argues that the case impliedly recognized that failure-to-protect claims are an acceptable application of *Carlson*. We disagree: *Farmer* is not a cognizable *Bivens* context. And if it were, Marquez's claim would still present a new *Bivens* context, as there are meaningful differences between his claim and the one at issue in *Farmer*.

## A. *Farmer* is not a recognized *Bivens* context.

The Supreme Court's *Bivens* jurisprudence squarely forecloses Marquez's argument that *Farmer* established a cognizable *Bivens* context. As we have already stated, in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), the Court held that *Bivens*, *Davis*, and *Carlson* "represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 131 (emphasis added). More recently, the Court in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), suggested that a "new *Bivens* context" arises anywhere that the Court has not affirmatively stated that *Bivens* applies—which it did in only those three cases.

We thus decline Marquez's invitation to recognize an implied fourth *Bivens* context arising from *Farmer*. Nearly thirty years have passed since the Supreme Court decided *Farmer*. If the Court were inclined to recognize it as one of the few acceptable *Bivens* contexts, it would have done so. Instead, the Court continues to reaffirm that there are but three of these cases, and *Farmer* is not one of them. *See Abbasi*, 582 U.S. at 131; *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020); *Egbert*, 142 S. Ct. at 1803.[2]

## B. Marquez's claim is meaningfully distinguishable from *Farmer*.

Even if we accepted Marquez's assertion that *Farmer* presents an acceptable *Bivens* claim, Marquez's claim would still require extending *Bivens* to a new context. A context is "new" if the case differs "in a meaningful way from previous *Bivens* cases." *Abbasi*, 582 U.S. at 139. Examples of a meaningful difference might include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other

---

[2] In so holding, we depart from the Third Circuit, whose decision to the contrary predates *Egbert*, and instead join the Fourth Circuit. *See Bistrian v. Levi*, 912 F.3d 79, 90–91 (3d Cir. 2018); *Bulger v. Hurwitz*, 62 F.4th 127, 139 (4th Cir. 2023); *see also Snowden v. Henning*, 72 F.4th 237, 241–42 (7th Cir. 2023) (emphasizing that the "*Bivens* trilogy" is a closed group).

> branches; or the presence of potential special
> factors that previous *Bivens* cases did not
> consider.

*Id.* at 140; *see also Snowden v. Henning*, 72 F.4th 237, 244
(7th Cir. 2023) (distilling "meaningful differences" as
"factual distinctions and legal issues that might alter the
cost–benefit balance that justified an implied damages
remedy in those cases").

At the outset, we observe that "the constitutional right at
issue" is different here than in *Farmer*. *See Abbasi*, 582 U.S.
at 140. While both cases involve an alleged failure to
protect, *Farmer* concerned an Eighth Amendment claim,
while Marquez lodges his complaint under the Fifth
Amendment. *See Egbert*, 142 S. Ct. at 1807 (quoting
*Abbasi*, 582 U.S. at 139). Marquez contends that this is not
a meaningful difference, arguing that the Fifth Amendment
standard for a failure-to-protect claim is the same as, if not
lower than, the Eighth Amendment standard. Marquez's
argument has some merit. Indeed, Justice Breyer echoed
that same point in *Abbasi.* Unfortunately for Marquez,
Justice Breyer was not in the majority in that case. *Abbasi*,
582 U.S. at 170 (Breyer, J., dissenting) (arguing that there is
no substantive difference in the scope of rights protected by
the Fifth and Eighth Amendments). The majority opinion in
*Abbasi* rejected the argument being advanced by Marquez.
In that case, the Supreme Court considered whether *Carlson*
permitted an implied cause of action in a lawsuit brought by
non-citizens detained in the wake of the 9/11 attacks and
who alleged that the warden violated the Fifth Amendment
by allowing guards to abuse detainees. *Id.* at 137–38
(majority opinion). The Court held that—despite the
"significant parallels" to *Carlson*—the case presented a new

12          MARQUEZ V. RODRIGUEZ

*Bivens* context.**[3]**  It relied in part on the fact that "*Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth." *Abbasi*, 582 U.S. at 147.

Besides this legal distinction, there are also meaningful factual differences between this case and *Farmer*.  To start, the plaintiff in *Farmer* was a transgendered individual who "projects feminine characteristics," while Marquez was an accused sex offender who requested segregation based solely on a charged crime that was unknown to others.  Thus, the *Farmer* plaintiff presumably faced a higher risk of harm because the other inmates would notice the physical characteristics that put the plaintiff at risk.

Another difference is that the *Farmer* plaintiff (a convicted criminal) resided in a prison, while Marquez (a pretrial detainee) was temporarily held in jail.  This difference in setting is significant.  Jails are typically smaller than prisons, they are not intended for long-term detention, and they house a different class of inmates.  Prisons and jails also may involve different levels of risk to inmate safety.  Because of these differences, jails and prisons are operated differently.  For example, a jail may have less space for protective custody than a larger prison designed to hold inmates long-term.

Thus, when compared to *Carlson* and *Farmer*, Marquez's claim arises under a different constitutional amendment, it alleges a different category of harm, and it arises in a different factual setting.  As the Supreme Court emphasized that even minor differences can satisfy the new-

---

[3] Because the lower court did not advance past this question, the Court vacated the judgment and remanded the case with instruction to conduct the special-factors analysis. *Abbasi*, 582 U.S. at 149.

context inquiry, *see Abbasi*, 582 U.S. at 149, we conclude that the differences identified here are more than enough to establish that Marquez's claim involves a new *Bivens* context.

## II. Special Factors Counsel Against Extending *Bivens* to This Case.

The district court erred in finding that the record did not support that "special factors" require dismissing Marquez's claim. Before extending *Bivens* to a new context, we must consider whether there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Id.* at 136 (quoting *Carlson*, 446 U.S. at 18). This means that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernández*, 140 S. Ct. at 743); *see also id.* at 1805 ("A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" (emphasis in original) (quoting *Abbasi*, 582 U.S. at 136)).

In setting this low bar, the Supreme Court has declined to "'create an exhaustive list' of factors that may provide a reason not to extend *Bivens*." *Hernández*, 140 S. Ct. at 743. Instead, guided by "separation-of-powers principles," we must "consider the risk of interfering with the authority of the other branches"—asking "whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (citations omitted) (quoting *Abbasi*, 582 U.S. at 135–37). Applying that standard here,

we hold that Marquez does not have a cognizable *Bivens* claim.

Marquez has remedies available other than a *Bivens* claim. If "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Abbasi*, 582 U.S. at 137 (alterations in original) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). We find that there are such remedies here. For example, Marquez could have challenged his placement in general population through administrative review procedures offered by the Board of Prisons. 28 CFR § 542.13–15; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). Marquez also could have filed for declaratory or injunctive relief, rather than for damages under *Bivens*. *See Abbasi*, 582 U.S. at 148.

Although the district court recognized these alternative remedies, it found that these procedures might not have been enough to address Marquez's injuries. This was error. Because our inquiry is limited by separation-of-powers principles, we do not consider the adequacy of the alternative remedy. That is "a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 142 S. Ct. at 1807; *see also Pettibone v. Russell*, 59 F.4th 449, 456–57 (9th Cir. 2023). The availability of these alternative remedies is enough for us to find that Congress—not the judiciary—is best suited to address Marquez's interests. *Egbert*, 142 S. Ct. at 1804, 1806–07 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by

superimposing a *Bivens* remedy."); *Bulger*, 62 F.4th at 140–41.

Our hesitation to extend *Bivens* is also counseled by the fact that Congress has already legislated on prison administration without providing a damages remedy against jail officials. *See* 42 U.S.C. § 1997e; *Abbasi*, 582 U.S. at 148 ("[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation. . . . [I]t seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.").

We thus conclude that the district court erred in finding that Marquez alleged a viable *Bivens* claim.

## CONCLUSION

In the fifty years since *Bivens* was decided, the Supreme Court has permitted only two other implied-damages actions arising under the Constitution. Outside of these cases, the Court has repeatedly declined to extend *Bivens* remedies. This hesitancy is informed by the basic structure of our government—the separation of powers that vests the authority to create new federal causes of action in Congress, not the courts. We may not allow a *Bivens* claim to proceed when "there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803.

Here, this mandate forecloses Marquez's requested remedy. Marquez's Fifth Amendment failure-to-protect claim differs meaningfully from any of the three accepted *Bivens* contexts. Because the legislature and executive are best positioned to address Marquez's interests—and have, in fact, provided alternative remedies to do so—we decline to

overstep our constitutional role to create a new damages action. We thus **REVERSE** the district court's order denying the officers' motion to dismiss.

---

W. Fletcher, J., concurring in the judgment.

Plaintiff Marquez was a pretrial detainee in federal prison, charged with sex offenses. After the events at issue in this case, the charges were dismissed, and Marquez was released from prison.

Marquez brings a civil suit for damages against prison officials under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging a failure to protect him from his fellow prisoners in violation of the Due Process Clause of the Fifth Amendment. The district court denied a motion to dismiss brought under Rule 12(b)(6). In this procedural posture, we accept as true all plausible factual allegations in Marquez's complaint and all reasonable inferences that may be drawn therefrom.

It is well known that sex offenders in prison are in danger of severe injury or death at the hands of other prisoners. Marquez alleges in his pro se complaint:

> Due to the nature of the alleged charges brought against him, it was imperative he be placed in protective custody to protect him from unreasonable risk of harm or from being the subject of attack by other inmates.
> During his interview for classification, C. Rodriguez reviewed his alleged charges and

made comments towards him such as "what a great guy" and "what an upstanding citizen."

The official was well aware of plaintiff[']s charges and failed in [his] duty to protect him from unreasonable risk or harm by refusing requests to place plaintiff into protective custody.

Instead he placed the plaintiff in general population and chose to ignore plaintiff[']s requests to be placed in protective custody and acted against prison policy and federal law. Defendant C. Rodriguez handed plaintiff an emergency contact form and said to him, "here, this is for when something happens to you in prison."

The plaintiff became fearful and afraid for his life and asked again to be placed in protective custody. The official ignored the plaintiff and instead advised plaintiff to lie to other inmates about his alleged charges. He said,"Don't worry about it, just tell the other inmates you['re] here for selling drugs."

Soon after Marquez was placed in the prison's general population, "the inmates moved plaintiff to a back corner of the dorm[i]tory and the[n] began to physically torture him by forcing him to perform extreme physical exertion until plaintiff could no longer move. Out of fear for his life and safety he complied." Afterwards, Marquez "began to experience more severe pain, fever, cold sweats, swelling of his face and body, vomiting, loss of ap[p]etite, urination of blood, shortness of breath, complete loss of leg function, dizziness, headache, and mental and emotional anguish." The next day, Marquez notified a jail official and a nurse of

what had happened. Medical staff drew blood for testing. On the third day, more blood was drawn, and Marquez was given an IV. He continued to urinate blood. On the fourth day, Marquez was given another IV. Finally, on the fifth day, he was taken to a hospital emergency room.

A doctor at the hospital informed Marquez that he had "severe kidney failure" and that "death is a realistic possibility." Fearing imminent death, Marquez asked to contact family members, but prison officials refused. Marquez spent a week in the hospital. By the end of the week, he had lost forty pounds. "[T]he end result of his injuries included acute rhabdomyalosis [life-threatening muscle injury], acute renal failure, acute tubular necrosis, severe dehydration, medical renal disease, pulm[o]nary congestion, cardiomegaly [enlarged heart], high blood pressure, severe renal azotemia [excess waste products in the blood], and other complications."

Marquez sought the prescribed administrative remedy in the prison and was denied relief.

The panel majority holds that because he is a federal prisoner, Marquez has not stated a cause of action for damages. If a state prisoner makes the same factual allegations, it is black-letter law that he states a cause of action for damages. *See*, *e.g.*, *Requena v. Roberts*, 893 F.3d 1195 (10th Cir. 2018); *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *Bowen v. Warden Baldwin State Prison,* 826 F.3d 1312 (11th Cir. 2016); *Junior v. Anderson*, 724 F.3d 812 (7th Cir. 2013); *Nelson v. Shuffman*, 603 F.3d 439 (8th Cir. 2010); *Whitson v. Stone Cnty. Jail*, 602 F.3d 920 (8th Cir. 2010); *Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009); *Howard v. Waide*, 534 F.3d 1227 (10th Cir. 2008); *Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005); *Calderon-*

*Ortiz v. LaBoy-Alvarado*, 300 F.3d 60 (1st Cir. 2002); *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999); *Hamilton v. Leavy*, 117 F.3d 742 (3d Cir. 1997); *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76 (6th Cir. 1995); *Matzker v. Herr*, 748 F.2d 1142 (7th Cir. 1984). Even if all of his factual allegations are true, Marquez can recover nothing. A state prisoner in the same situation would likely recover substantial damages.

It does not have to be this way. Indeed, it has not always been this way.

The problem is easy to state. Section 1983, a post-Civil War statute, provides a cause of action for damages for violations of constitutional rights under color of state law. After almost a century of ignoring § 1983, the Supreme Court held in 1961 that it provides a cause of action for damages against state and local officials who have violated the Constitution. *See Monroe v. Pape,* 365 U.S. 167 (1961). However, there is no equivalent statute providing a cause of action for damages against a federal official.

The solution is also easy to state. When a suit is brought against a federal officer who has violated the Constitution, the Court can infer a cause of action for damages directly from the Constitution, analogous to the cause of action under § 1983. The Court did this in *Bivens*, ten years after *Monroe v. Pape*. Justice Brennan wrote for the Court that there were no "*special factors counseling hesitation* in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396 (emphasis added). Nor was there an "explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents but must instead be remitted to *another remedy, equally effective in the view of Congress*."

*Id.* at 397 (emphasis added). Recognizing that compensatory damages were the only effective remedy, Justice Harlan wrote, "*For people in Bivens' shoes, it is damages or nothing.*" *Id.* at 410 (Harlan, J., concurring) (emphasis added).

In *Butz v. Economou*, 438 U.S. 478 (1978), seven years later, the Court held that qualified immunity for a federal officer in a *Bivens* action should match qualified immunity for a state officer in a § 1983 action. Justice White wrote for the Court:

> [I]n the absence of congressional direction to the contrary, there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the identical violation under § 1983. . . . That Congress decided, after the passage of the Fourteenth Amendment, to enact legislation specifically requiring state officials to respond in federal court for their failures to observe the constitutional limitations on their powers is hardly a reason for excusing their federal counterparts for the identical transgressions. To create a system in which the Bill of Rights monitors more closely the conduct of state officials than it does that of federal officials *is to stand the constitutional design on its head.*

*Id.* at 501, 504 (emphasis added).

The promise to the ear has been broken to the hope. The vision of the Court that decided *Bivens* and *Economou*, a vision articulated by justices as different as Justices Brennan, Harlan, and White, has been abandoned. The words are the same—"special factors counseling hesitation" and "another remedy, equally effective in the view of Congress"—but the reality is not.

For a "special factor," it now suffices that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020)). For "another remedy, equally effective in the view of Congress," a failed administrative grievance now suffices. *Egbert*, 142 S. Ct. at 1806 (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

Denying a damages remedy here is a miscarriage of justice. There is no other way to characterize our decision today.

As in *Bivens*, the reality is that there are no "special factors" that justify denying Marquez a damages remedy. To deny a damages remedy to a federal prisoner while granting it to a state prisoner in the same circumstance "is to stand the constitutional design on its head." As in *Bivens*, the reality is that a grievance procedure is not an "equally effective remedy in the view of Congress." "For people in [Marquez's] shoes, it is damages or nothing."

With deep regret, I concur in the result.